Submitted November 24, 2020, reversed and remanded March 10, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHRISTIE R. SCOTT,
*Defendant-Appellant.*

Marion County Circuit Court
19CR04083, 17CR38038;
A170781 (Control), A170782

483 P3d 701

In this case, over defendant's objection, the trial court instructed the jury that it could convict defendant of four felony crimes without unanimously finding her guilty. The jury returned three guilty verdicts, and neither party requested a jury poll. In consolidated appeals, defendant challenges her resulting convictions and her subsequent probation revocation, contending that the court must reverse her convictions because they were obtained after a violation of her federal constitutional rights and the state has failed to show that the violation was harmless beyond a reasonable doubt. The state acknowledges that the jury instruction was erroneous, but it argues that defendant failed to preserve the issue. *Held*: Defendant preserved her contention that the nonunanimous jury instruction violated the Sixth Amendment when she objected to the instruction. She is correct that the giving of the nonunanimous jury instruction violated her federal constitutional rights. The state, the beneficiary of the constitutional violation, has not shown beyond a reasonable doubt that the constitutional violation was harmless.

Reversed and remanded.

Tracy A. Prall, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kali Montague, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jennifer S. Lloyd, Assistant Attorney General, filed the brief for respondent.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeHOOG, J.

Reversed and remanded.

Mooney, J., concurring.

**DeHOOG, J.,**

In *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), the United States Supreme Court held that the Sixth Amendment to the United States Constitution requires a jury to be unanimous for it to convict a defendant of a serious offense. In *State v. Flores Ramos*, 367 Or 292, 299, 478 P3d 515 (2020), the Oregon Supreme Court held that the Sixth Amendment is violated when a trial court instructs the jury that it can convict a defendant of a serious offense without being unanimous. In this case, over defendant's objection, the trial court instructed the jury that it could convict defendant of four felony crimes without unanimously finding her guilty. The jury returned three guilty verdicts, and neither party requested a jury poll.

In these consolidated appeals, defendant challenges her resulting convictions and her subsequent probation revocation, contending that we must reverse her convictions because they were obtained after a violation of her federal constitutional rights and the state has failed to show that the violation was harmless beyond a reasonable doubt. The state acknowledges that the jury instruction was erroneous, but it argues that defendant failed to preserve the issue. As explained below, we agree with defendant and, accordingly, reverse and remand.

In the case at issue in appeal number A170781, defendant was charged with four felony counts. Before trial, she asked the court to instruct the jury that it must render a unanimous verdict. During trial, the court denied that request and, instead, instructed the jurors that 10 or more of them had to agree to render a verdict. Defendant excepted to the nonunanimous jury instruction. The jury found defendant guilty of three of the charged crimes. After the jury rendered its verdict, the court asked whether either party wanted the jury polled, and both the state and defendant declined. Based on the resulting convictions, defendant's probation in the case at issue in appeal number A170782 was revoked.

On appeal, defendant challenges her three convictions in appeal number A170781, as well as the probation revocation in appeal number A170782. She argues that the

court's nonunanimous jury instruction violated the Sixth Amendment, and she points out that, under well-settled federal harmlessness law, the beneficiary of a constitutional violation must demonstrate that the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 US 18, 24, 87 S Ct 824, 17 L Ed 2d 705 (1967). Here, she argues, the state failed to make the record necessary to demonstrate that the erroneous jury instruction was harmless, because it declined the trial court's offer to poll the jury. Accordingly, she contends that we must reverse her convictions and the resulting probation violation. The state responds that, although defendant proffered a correct instruction and excepted to the unconstitutional instruction that the trial court gave, we may not reverse her convictions, because defendant, rather than the state, was required to have the jury polled in order to preserve her contention that the nonunanimous jury instruction was unconstitutional.

At the outset, we observe that defendant is correct both that her Sixth Amendment rights were violated by the trial court's erroneous instruction and that the beneficiary of a preserved federal constitutional error bears the burden of proving the harmlessness of that error beyond a reasonable doubt. Indeed, the state does not dispute either of those points. As noted above, the Oregon Supreme Court explained in *Flores Ramos*, 367 Or at 299, that the Sixth Amendment is violated not only when a trial court accepts nonunanimous verdicts, but also "when a trial court tells the jury that it can convict a defendant of a serious offense without being unanimous." That is, a defendant's federal constitutional rights are violated when the trial court instructs the jury that it can convict the defendant of a serious offense without unanimity.

When a defendant's federal constitutional rights are violated, the federal harmless-error inquiry controls whether the defendant's conviction must be reversed. *Flores Ramos*, 367 Or at 533 ("When a federal constitutional error is not structural, the conviction can be affirmed only if the error 'was harmless beyond a reasonable doubt.'" (Quoting *Arizona v. Fulminante*, 499 US 279, 307-08, 111 S Ct 1246, 113 L Ed 2d 302 (1991).)). That inquiry requires the beneficiary of the violation to prove beyond a reasonable doubt

that the violation did not contribute to the defendant's conviction. *Chapman*, 386 US at 24; *see also, e.g.*, *Fulminante*, 499 US at 295-96 (noting that the state, the beneficiary of the constitutional violation, bore the burden of proving that the constitutional violation "did not contribute to [the defendant's] conviction"). *Cf. United States v. Olano*, 507 US 725, 734, 113 S Ct 1770, 123 L Ed 2d 508 (1993) (noting, under federal rules of criminal procedure, that, as to *unpreserved* errors, "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice," whereas preserved errors are subject to ordinary harmless-error inquiry, with burden of proving harmlessness resting on the Government).

Here, because the jury was not polled, we do not know whether the Sixth Amendment violation contributed to defendant's conviction; we do not know whether, in accordance with the unconstitutional instruction, the jury convicted defendant on less than a unanimous vote. Under the federal harmlessness inquiry, that deficiency in the record falls on the state, because it is the beneficiary of the constitutional violation.

In an effort to avoid that straightforward analysis, the state contends that we should not reach the merits of defendant's appeal because defendant failed to adequately preserve her argument that the jury instruction violated her Sixth Amendment rights. Preservation requires "that an issue, to be raised and considered on appeal, ordinarily must first be presented to the trial court." *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008); *see also id.* at 219-20 (the policies underlying the preservation requirement are giving "a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made"; ensuring "fairness to an opposing party, by permitting the opposing party to respond to a contention and by otherwise not taking the opposing party by surprise"; and fostering "full development of the record, which aids the trial court in making a decision and the appellate court in reviewing it").

In this case, as recounted above, defendant asked the court to instruct the jury that its verdict had to be

unanimous to convict. After the court declined and, instead, instructed the jury that its verdict did not have to be unanimous, defendant took exception to the instruction given.

Defendant's request for a unanimous jury instruction and objection to the nonunanimous jury instruction that the trial court gave instead satisfied all of the policies underlying the preservation requirement. As particularly relevant here, it fostered full development of the record. Specifically, in light of the well-established federal harmlessness analysis discussed above, defendant's invocation of her Sixth Amendment right to jury unanimity alerted the state that, if defendant's Sixth Amendment argument ultimately proved correct, the state would bear the burden of showing harmlessness on appeal. Thus, it gave the state the opportunity to fully develop the record that would be necessary to show that the constitutional violation was harmless beyond a reasonable doubt. *Accord State v. Dilallo*, 367 Or 340, 347, 478 P3d 509 (2020) ("The fact that the opposing party may need to take additional steps to develop the record in order to address an assignment of error is one of the reasons that a timely objection is required."). In support of its argument to the contrary, the state suggests three lines of reasoning. First, the state asserts that the outcome in *Dilallo*—where the defendant did not object to a nonunanimous jury instruction and there was no jury poll—controls the outcome in this case, where defendant did object to the instruction. In *Dilallo*, the court explained that it would not exercise its discretion to correct plain error because the "defendant did not put the state or the court on notice of his objection to the jury instruction, so the absence of a jury poll is fairly attributable to defendant, even if the state would otherwise bear the burden of establishing harmlessness on appeal." 367 Or at 347. That rationale has no bearing here, where defendant *did* put the state and the trial court on notice of her objection to the jury instruction, and *Dilallo* therefore does not control.

Second, somewhat at odds with its acknowledgment that, under *Ramos*, the trial court erred in *instructing* the jury that it could render a nonunanimous verdict, the state attempts to recast the constitutional error relevant to our

analysis as the court's act of accepting nonunanimous ver-
dicts. Under that view, it argues that, to preserve the issue
for appeal, defendant had to demonstrate that the jury's ver-
dicts were nonunanimous.[1] However, as we have explained,
the constitutional error that defendant objected to in the
trial court and challenges on appeal was the court's instruc-
tion of the jury, not the acceptance of nonunanimous ver-
dicts. *See Flores Ramos*, 367 Or at 299 (giving a nonunani-
mous jury instruction for a serious offense violates the Sixth
Amendment). Defendant preserved that issue by request-
ing a unanimous verdict instruction and excepting to the
instruction that the court gave instead.

Finally, the state suggests that a defendant must
request a jury poll to develop a record that is adequate for
appellate review, and that that requirement is properly
viewed as part of the state law of preservation, rather than
as part of the harmlessness analysis—which, as noted above,
is controlled by federal law for federal constitutional viola-
tions, including the one that occurred in this case, *Flores
Ramos*, 367 Or at 333 (applying the federal harmlessness
standard where the trial court gave a nonunanimous jury
instruction). But that argument also relies on a misappre-
hension of the error that defendant is raising.

We have held that "it is the appellant's burden to
furnish a sufficient record to demonstrate that the trial

---

[1] In briefing in other cases similar to this one, the state has also relied on
two Oregon Supreme Court cases that, in the state's view, show that an appellant
challenging a jury concurrence instruction cannot preserve a challenge to the
instruction without also requesting a jury poll. *See Whelchel v. Strangways*, 275
Or 297, 306, 550 P2d 1228 (1976) (in a civil case, cursorily stating that the defen-
dant had "waived" a challenge by declining a jury poll); *see also Sandford v. Chev.
Div. Gen. Motors*, 292 Or 590, 613, 642 P2d 624 (1982) (summarizing the holding
from *Whelchel* without further elaboration and disposing of the case before it on
other grounds).

In our view, in *Whelchel*, the Supreme Court used the term "waiver" as a
shorthand reference to a species of harmlessness analysis—based on state rather
than federal law—in which the appellant carries the burden of demonstrating
prejudice. The court cited no precedent and provided no explanation suggesting
that ordinary principles of preservation did not apply; instead, it appears to have
been considering whether the error was reversible, that is, whether the court
could say it was harmless. The state does not explain, and we do not perceive,
what kind of standalone principle of waiver might come into effect when the prin-
ciples of preservation have been served and federal law controls our harmless-
ness analysis. Thus, *Whelchel* does not affect our analysis.

court erred." *State v. Y. B.*, 296 Or App 781, 785, 439 P3d 1036 (2019) (internal quotation marks and brackets omitted). Relying on that principle, the state contends that defendant has failed to furnish a record sufficient to demonstrate that the trial court erred, because the record does not reveal whether the verdicts were unanimous. But, again, the claimed error was in giving the instruction, not in accepting the verdicts. Thus, the record does establish that the trial court erred: The court violated the Sixth Amendment when it instructed the jury that it could return a nonunanimous verdict, and that violation is amply documented in the record. Defendant, as appellant, has provided us a record that is sufficient to demonstrate that the trial court erred.

Defendant preserved her contention that the nonunanimous jury instruction violated the Sixth Amendment when she objected to the instruction. As explained above, her contention that the giving of the nonunanimous jury instruction violated her federal constitutional rights is correct. Because the state, the beneficiary of the constitutional violation, has not shown beyond a reasonable doubt that the constitutional violation was harmless, we must reverse and remand defendant's convictions and the probation revocation that resulted from them.

Reversed and remanded.

**MOONEY, J.,** specially concurring.

The parties agree that the trial court committed error when it instructed the jury that it could reach a guilty verdict with less than unanimous agreement among its members. That instructional error violated the Sixth Amendment to the United States Constitution. *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020). The parties also agree that defendant requested a unanimous jury instruction that was not given and that she excepted to the nonunanimous jury instruction that was given. They further agree that the jury was not polled and that the record does not otherwise reflect the jury count on any of the charges. The state concedes that defendant "preserved her challenge to the jury instruction given by the court" but argues that she is "not entitled to reversal" where

"she affirmatively declined the court's invitation to poll the jury."

Defendant argues that the burden to request a jury poll was on the state and that the state's failure to request a poll requires reversal of her convictions. The majority agrees with defendant. I do not agree that the burden to request a jury poll shifts to the state once defendant objects, or takes exception, to a jury instruction. But when both parties, fully aware of the defendant's objection, affirmatively decline the trial court's offer to conduct a jury poll, the benefit of the doubt that is created by the mutually and intentionally opaque record goes to the defendant. Because that is what happened here, I agree that defendant's convictions should be reversed.

When the Oregon Supreme Court declined to review an unpreserved assignment of error relating to the same unconstitutional jury instruction given here, it did so "[b]ecause of the absence of a jury poll." *State v. Dilallo*, 367 Or 340, 342, 478 P3d 509 (2020). The majority concludes that, because defendant objected to the offending instruction, unlike the defendant in *Dilallo,* the burden to request a jury poll necessarily shifted to the state. But that is not what *Dilallo* says.

The trial court asked both the defendant *and the state* if either would like it to conduct a jury poll under ORS 136.330 and ORCP 59 G(3). Both declined. For defendant, not knowing the jury count provided the possibility that her convictions could be reversed even if they were unanimous. For the state, not knowing the jury count meant that the convictions could be affirmed even if they were not unanimous. Either possibility would yield an unjust result.

Citing *Chapman v. California*, 386 US 18, 24, 87 S Ct 824, 17 L Ed 2d 705 (1967), the majority concludes that the burden to request a poll shifted to the state under a federal harmlessness analysis because the state was "the beneficiary of the constitutional violation." 309 Or App at 617. I respectfully offer my view that the state never benefits from a constitutional violation. Consider these words, as true today as when they were written by Justice Sutherland

in 1935, and as applicable to state attorneys as to United States attorneys:

> "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

*Berger v. United States*, 295 US 78, 88, 55 S Ct 629, 79 L Ed 1314 (1935). In my view, the state had a duty to say "yes" when asked whether it would like the court to conduct a jury poll because the state's interest was in a just outcome—"that guilt shall not escape or innocence suffer." *Id.* Neither the state, nor the people it represents, benefit when a person's constitutional rights are violated. And we should not suggest otherwise.

Ours is an adversarial system of criminal justice. But it is not a free-for-all. The integrity of that system—and the public's confidence in it—requires fairness. That means, for example, that the defendant is entitled to a presumption of innocence, ORS 136.415; that the state has a duty to produce exculpatory evidence, ORS 135.815(1)(g) and (2); and that the state may not obtain a conviction through the use of evidence derived from a constitutional violation, *State v. Vondehn*, 348 Or 462, 475-76, 236 P3d 691 (2010). And, although the rule of lenity was abolished in Oregon, ORS 161.025(2), the prudential principles supporting that rule have been applied by us recently in *State v. Lobue*, 300 Or App 340, 348, 453 P3d 929 (2019), to resolve an ambiguity in a pretrial release agreement in favor of the defendant and against the state.

I do not write separately to quibble about terminology. I write because there is an important difference

between (1) the state as "beneficiary" of a constitutional violation and (2) the state as the people's representative whose interest is not to "win a case, but that justice shall be done." That difference is significant.

I would reach the same outcome as the majority does, but I would not use the phrase "beneficiary of the constitutional violation" to get there. Instead of tethering reversal of defendant's convictions to the false notion that the state benefited from the constitutional violation, I would reverse the convictions because, when asked whether it wanted the jury polled, the state discarded its obligation to justice and declined. It chose to be satisfied with the convictions, whatever the counts might have been. It was, in effect, hedging its bets on the unknown in order to obtain a conviction rather than serving the interests of justice by determining what the count actually was.[1] We should call that what it is.

To be clear, the burden did not shift. Defendant should have requested a poll. I would nevertheless resolve the doubt that the parties mutually created against the state because, as between the two, it is the state that must place justice above the possibility of a rogue win.

---

[1] I acknowledge that the United States Supreme Court had not yet issued its *Ramos* opinion when the state declined a jury poll in this case. But the constitutionality of the nation's only remaining state constitutional provision allowing nonunanimous convictions was widely known to be pending before the Court and, in any event, a poll could have revealed a jury count that failed to meet the 10-2 requirement then in place.